UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Virginia Nicole Rogers

    v.                                          Civil No. 19-cv-1014-JL
                                                Opinion No. 2021 DNH 058

Andrew Saul, Commissioner
of Social Security

# ORDER ON APPEAL

Virginia Nicole Rogers has appealed the Social Security Administration's ("SSA") denial of her claim for a period of disability and application for disability insurance benefits and supplemental security income.[1] Rogers initially filed her application for benefits on April 28, 2014, alleging disability as of November 16, 2013. The Administrative Law Judge ("ALJ") at the SSA denied her application, concluding that despite several severe impairments, Rogers retained the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy and was therefore not disabled. See 20 C.F.R. §§ 404.1505(a), 404.1566(b). Rogers did not file exceptions to the ALJ's decision and the Appeals Council did not review the decision on its own, which resulted in it becoming the final decision on her application, see id. § 404.984(c)-(d).

---

[1] For purposes of this order, the court will cite only the regulations applicable to DIB claims, as the analogous regulations applicable to SSI claims contain the same requirements in all relevant respects. See 20 C.F.R. § 416.901, et seq.; Smith v. Berryhill, 139 S. Ct. 1765, 1772 (2019) ("The regulations that govern the two programs are, for today's purposes, equivalent.").

Rogers now appeals the Commissioner's decision to this court – which has jurisdiction under 42 U.S.C. § 405(g) (Social Security) – and has moved to reverse the decision. See LR 9.1(c). Rogers argues that the ALJ's RFC assessment cannot stand because in making that assessment, he omitted or improperly evaluated medical opinions in the record. The Commissioner disagrees and has cross-moved to affirm his decision. See LR 9.1(d). After careful consideration of the parties' submissions and the administrative record, the court grants Rogers's motion, denies the Commissioner's motion, and remands the case for further proceedings.

I. **Applicable legal standard**

In this proceeding, the court is authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g). The court limits its review "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).

If the Commissioner's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion."

Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991) (per curiam).  The Commissioner's findings are not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [him], not for the doctors or for the courts."  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal quotation marks and brackets omitted).

## II.     Background[2]

Rogers applied for DIB and SSI in April 2014, alleging a disability onset date of November 16, 2013, when she was 34 years old.  She alleged she was disabled due to paralyzing anxiety, an injured sacroiliac joint, bipolar disorder, suicidal ideation, memory problems, and back and neck injuries.  After Rogers's claim was denied at the initial level in August 2014, she requested a hearing before an ALJ, which occurred on April 27, 2016 before an ALJ.  The ALJ denied Rogers's claim in a written decision dated May 20, 2016, which Rogers appealed to this court.

---

[2] The court recounts here only those facts relevant to the instant appeal.  Rogers recites the record facts more completely in her Statement of Material Facts (doc. no. 11), and the Commissioner has not filed his own Statement of Material Facts, so the court incorporates Rogers's facts by reference.

In March 2017, per the Commissioner's voluntary motion for remand, this court reversed the ALJ's 2016 decision and remanded the case for a new hearing and decision. On remand, the Appeals Council directed the presiding ALJ to further evaluate the opinions of three psychologists. The same ALJ presided over another hearing in March 2018 and issued another unfavorable decision. Rogers again appealed the ALJ's decision to this court, and per another motion for voluntary remand from the Commissioner, this court remanded the case a second time for further proceedings and a new decision.

In October 2018, the Appeals Council remanded the case for assignment to a different ALJ and a new hearing and decision. The different ALJ held two hearings in February 2019 and June 2019, at which testimony was taken from Rogers, reviewing psychologist Nicole Martinez, Ph.D., reviewing physician Darius Ghazi, M.D., and vocational expert Albert J. Sabella. The ALJ issued an unfavorable decision in July 2019, finding that Rogers had not been disabled from her alleged disability onset date through the date of his decision.

The ALJ assessed Rogers's claims under the five-step sequential analysis required by 20 C.F.R. § 404.1520. At step one, he found that Rogers had not engaged in substantial gainful activity since November 16, 2013, her alleged disability onset date. Tr. 2611. At step two, the ALJ found that Rogers's degenerative disc disease, obesity, depression, and anxiety/panic disorder qualified as severe impairments. Tr. 2611. The ALJ also found that her restless leg syndrome, urinary incontinence, memory loss, obstructive sleep apnea, asthma, and tachycardia were not severe impairments because by themselves, they caused minimal symptoms. Tr. 2611-12. At step three, the ALJ

4

determined that none of Rogers's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 2612.

The ALJ then found that Rogers had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, or be exposed to hazards. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. She can sit for six hours out of an eight hour work day and stand and/or walk for four hours total in an eight-hour workday, but would need a sit-stand option at will. The claimant can understand and remember simple, repetitive, and routine tasks and can understand and remember more detailed tasks if instructions are in written form. She can sustain infrequent, or brief and superficial, interaction with the public and should avoid tandem tasks with coworkers. The claimant is able to maintain attention and concentration for two-hour increments throughout an eight-hour workday and 40-hour workweek and can adapt to occasional changes in the work routine.

Tr. 2614.

In making his RFC finding, the ALJ noted that "all opinions were carefully evaluated and weighed." Tr. 2622. Yet the ALJ's decision did not mention a March 2012 orthopedic examination opinion of Frank Graf, M.D. Instead, he gave "great weight" to the testimonial opinions of non-examining psychologist Dr. Martinez and non-examining orthopedic surgeon Dr. Ghazi. Tr. 1891-1906, 2627-28, 2660-71, 3552-65.[3]

Dr. Ghazi testified that Rogers had been diagnosed with morbid obesity, degenerative disease in the lower cervical spine and lumbar spine, restless leg syndrome,

---

[3] The ALJ evaluated additional medical opinions in the record. As Rogers does not challenge the ALJ's weighing of those opinions, the court does not address them.

5

and issues related to obesity, such as high blood pressure, pre-diabetic symptoms, and sleep apnea. Tr. 2615-16. Dr. Ghazi opined that Rogers could stand and/or walk for four hours total in an eight-hour workday could occasionally bend or stoop, but could not get on a ladder or be exposed to unprotected heights. Id. Given Rogers's obesity and other conditions, Dr. Ghazi further testified that she could lift or carry only five pounds frequently and ten pounds occasionally, and occasionally climb stairs. Id. at 2616. Dr. Ghazi also opined that Rogers's pain symptoms would frequently interfere with her ability to stay on task, and that the treatment interventions for Rogers's pain only decreased her pain levels for a limited duration. Id.

The ALJ gave great weight to Dr. Ghazi's opinions and adopted most of them as "consistent with the medical evidence of record." Tr. 2627. The ALJ, however, did not adopt Dr. Ghazi's opinion that Rogers could only lift or carry five pounds frequently and ten pounds occasionally, and instead found that Rogers could perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)[4], with no further restrictions. The ALJ also did not adopt Dr. Ghazi's opinion that Rogers's pain would frequently interfere with her attention and concentration. Id.

The ALJ then determined at step four that Rogers could not perform her past relevant work as a cashier, counter attendant, counter clerk, or personal care attendant or

---

[4] These regulations define "sedentary work" as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

6

home attendant. Tr. 2628. After considering the testimony of the vocational expert, the ALJ concluded at step five that, in light of Rogers's age, education, work experience, and RFC, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and was therefore not disabled. Tr. 2629; see 20 C.F.R. §§ 404.1509, 404.1520(a), and 404.1521. Accordingly, the ALJ concluded that Rogers had not been disabled from November 16, 2013 to July 17, 2019 and denied her application for benefits. Tr. 2629-30. This action followed.

### III. Analysis

Rogers argues the ALJ erroneously evaluated the opinion evidence of record in determining her RFC and asks to reverse the ALJ's decision on two grounds. First, she argues that reversal is required because the ALJ's decision did not include any evaluation of Dr. Graf's March 2012 orthopedic examination, and that the ALJ's error in not discussing Dr. Graf's examination was not harmless. Second, she contends that the ALJ's RFC findings were inconsistent with the opinion testimony of Dr. Ghazi, and the ALJ's explanation of the inconsistency is incomplete and unsupported by substantial evidence. Concluding that the first alleged error mandates remand, the court grants Rogers' motion and reverses the Commissioner's decision.

#### A. Medical opinion evidence

A claimant's RFC is "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a). It must be crafted by the ALJ based on all relevant evidence in the record. 20 C.F.R. § 404.1545; see Lord v. Apfel, 114 F. Supp.

2d 3, 13 (D.N.H. 2000). In determining an RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." See Social Security Ruling 96-8p, 1996 WL 374184 at *5 (July 2, 1996). This is typically done by "piec[ing] together the relevant medical facts from the findings and opinions of multiple physicians," see Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987), but may sometimes incorporate "commonsense judgments about functional capacity" based upon those findings. Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

An ALJ must consider and evaluate "medical opinions" provided by both treating and non-treating "acceptable medical sources," "together with the rest of the relevant evidence." 20 C.F.R. § 404.1527(a)-(c) (effective for claims filed before March 27, 2017); see also SSR 96-8p, 1996 WL 374184, at *7. In addition, the ALJ must address each medical opinion and explain why those that conflict with the RFC assessment were not adopted. SSR 96-8p, 1996 WL 374184, at *7.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). When weighing a medical opinion, an ALJ must consider, inter alia, the nature of the relationship between the medical source and the claimant, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the source of the opinion is a specialist. See id. § 404.1527(c).

The opinion of an examining physician will generally carry more weight than the opinion of a non-examining physician. 20 C.F.R. § 404.1527(c)(1); Brindley v. Colvin, No. 14-cv-548-PB, 2016 WL 355477, at *5 n.3 (D.N.H. Jan. 29, 2016) (Barbadoro, J.). "Moreover, because non-examining sources have no treating or examining relationship with the claimant, the weight the ALJ will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." Brindley, 2016 WL 355477, at *5 n.3 (citing 20 C.F.R. § 404.1527(c)(3)) (internal quotation marks omitted).

### 1. Dr. Graf's Opinion

Dr. Graf issued an orthopedic examination report of Rogers on March 6, 2012. After reviewing Rogers's medical history, educational history, work history, medical records and medications, and conducting a physical examination, Dr. Graf diagnosed Rogers with "[e]xogenous obesity, degenerative osteoarthritis of the lumbosacral spine with L4-L5 disk space narrowing, L4 spinal nerve root pattern of radiculopathy, right lower extremity; psoriasis; by patient history, degenerative osteoarthritis of the right hip joint, and by examination mild osteoarthritis of the right hip joint with lumbosacral and right lower extremity symptoms predominant" and opined that Rogers was "impaired in bending, stooping, lifting, carrying, squatting tolerances." Tr. 605-07.

The ALJ did not mention, let alone discuss or evaluate, Dr. Graf's opinion in his decision. Ordinarily, an ALJ's complete failure to consider a medical opinion in the record is a legal error that requires remand. See Nguyen, 172 F.3d at 35-36; see also Dube v. Astrue, 781 F. Supp. 2d 27 (D.N.H. 2011); Kneeland v. Berryhill, 850 F.3d 749,

761 (5th Cir. 2017) ("The ALJ's root error was failing to address—or even mention—Dr. Bernauer's opinion in his decision. It appears from his RFC determination that the ALJ either did not consider Dr. Bernauer's opinion, or considered it but assigned it no weight. If the former, remand is appropriate for consideration of Dr. Bernauer's opinion. If the latter, remand is appropriate for an explanation of the rejected medical opinion, or an explanation of what weight was assigned."). An ALJ's decision "need not directly address every piece of evidence in the administrative record" if it is cumulative of evidence already discussed by the ALJ or fails to support the claimant's position. Lord, 114 F. Supp. 2d at 13. The Commissioner agrees that the ALJ erred by not discussing Dr. Graf's opinion, but argues that Dr. Graf's opinion would not change the ultimate result, and thus the error was "harmless." See Cassidy v. Berryhill, No. 17-451, 2018 WL 1157761, at *6 (D.N.H. Mar. 5, 2018) (McAuliffe, J.) (holding where a claimant "fail[s] to demonstrate that any harm flowed from [an] ALJ's error," the error is harmless, and provides "no basis to remand . . . for additional proceedings.") (citing Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000)). Through this argument, the Commissioner is essentially stating that Dr. Graf's opinion (which predates the alleged onset of disability)[5] is cumulative of other evidence in the record and does not support Rogers's position. The court disagrees.

---

[5] The Commissioner passingly attempts to discredit Dr. Graf's opinion because it pre-dated the alleged onset of disability. See Doc. 13-1, at 5. While "such opinions may be of limited relevance in isolation, evidence that predates the onset of disability may help establish disability when considered and evaluated in combination with later evidence." Higgins v. Saul, No. 18-CV-1136-LM, 2020 WL 91059, at *3 (D.N.H. Jan. 7, 2020) (McCafferty, J.) (citing Hartford v. Berryhill, No. 17-CV-467-SM, 2018 WL 1385913, at *6 (D.N.H. Mar. 19, 2018) (McAuliffe,

"[A]n ALJ may not simply ignore relevant evidence, especially when that evidence supports a claimant's cause." Lord, 114 F. Supp. 2d at 13 (citing cases). While an ALJ, not the reviewing court, resolves conflicts in the evidence, an ALJ may not adopt one view of the evidence, "without addressing the underlying conflict." Dube, 781 F. Supp. 2d at 35 (quoting Nguyen v. Callahan, 997 F. Supp. 179, 182 (D.Mass.1998)). Here, the ALJ ignored Dr. Graf's opinion, which supports Rogers's claims because it includes more-severe diagnoses than the impairments adopted by the ALJ and also includes more-severe physical limitations than those adopted by the ALJ. Dr. Graf also conducted a physical examination and other tests of Rogers's pain tolerance that are not duplicated elsewhere in the record, and his opinion is thus not cumulative. Furthermore, the ALJ adopted Dr. Ghazi's view of the evidence without addressing its underlying conflict with Dr. Graf's opinions. This was error.

The error was not harmless because "a court must be able to determine whether the ALJ considered the contrary evidence and chose to discredit it, or whether it was 'simply ignored.'" Dube, 781 F. Supp. 2d at 35 (quoting Lord, 114 F. Supp. 2d at 14). The court cannot make that determination on this record. Because the ALJ's decision does not "take into account whatever in the record [that] fairly detracts from its weight," the court is not "satisfied that [his] decision was supported by substantial evidence." Id. (quoting Lord, 114 F. Supp. 2d at 14). For this reason alone, the ALJ's error requires

---

J.)). Accordingly, it was still error for the ALJ to "ignore medical reports simply because they predate the alleged onset of disability." Higgins, at *3 (quoting Beth v. Astrue, 494 F. Supp. 2d 979, 1007 (E.D. Wis. 2007)).

remand.  See Higgins, 2020 WL 91059, at *4 (reversing based on ALJ's failure to address medical opinion and noting that "numerous courts have remanded in similar circumstances") (citing Nguyen, 172 F.3d at 35-36 and other decisions); Dube, 781 F. Supp. 2d at 35 ("It was error for the ALJ to overlook Dr. Southworth's opinion and therefore, the court reverses the ALJ's decision.").

    For the sake of completeness, the court will nevertheless consider the Commissioner's arguments that the ALJ's error was harmless.  First, the Commissioner argues that none of the limitations or diagnoses that Dr. Graf opined about would have prevented Rogers from performing the jobs in the national economy that the ALJ found Rogers could perform.  Specifically, because the roles of "final assembler", "machine tender carding operator", and "inspection, printer circuit touchup" assembler do not require bending or stooping, Rogers's alleged impairments in these areas (according to Dr. Graf) are irrelevant.  While the court agrees that none of these jobs require bending or stooping, Dr. Graf also opined that Rogers would be impaired in lifting and carrying tolerances, and each of these jobs requires some degree of lifting and carrying.

    Next, the Commissioner contends that because Dr. Graf did not quantify the extent of Rogers's lifting or carrying impairments, the court cannot determine if the alleged impairment would have prevented Rogers from performing sedentary work (which requires "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools").  But that is precisely the problem that results when an ALJ ignores medical opinion evidence all together.  The cumulative effect of the medical evidence is determinative, and it is not this court's role to decide

whether Dr. Graf's opinions as to Rogers's impairments would have led to a more-restrictive RFC. See Higgins, 2020 WL 91059, at *3 (rejecting argument that ignored medical opinion was not detailed enough to matter and that it was not clear that the RFC would have been more restrictive if the ALJ had considered the ignored opinion). That determination is for the ALJ on remand. What matters here is that consideration of this favorable, non-cumulative evidence could have changed the end result, and that requires remand.

For example, had the ALJ considered Dr. Graf's more-extensive diagnoses and determined whether they constituted severe or non-severe medically determinable impairments, it may have caused him to impose more restrictive physical limitations as part of Rogers's RFC.[6] In fact, a different ALJ gave great weight to Dr. Graf's opinions and imposed more-restrictive physical limitations as part of Rogers's RFC. While neither this court nor subsequent ALJs are bound under res judicata principles by the findings in the prior ALJ's vacated decision, the prior ALJ's findings are still part of the record the court may review, and they show the potential impact of Dr. Graf's opinions when properly considered by an ALJ. Because the court cannot determine whether the ALJ

---

[6] The Commissioner seems to suggest that Dr. Graf's additional diagnoses are irrelevant "because the determination proceeded to the RFC stage" and what Rogers suffered from became irrelevant at that point. While it may be true that a diagnosis alone does not mandate a finding of a certain limitation, a claimant's diagnoses (like his or her symptoms) are an important factor at step four in determining a claimant's impairments and the effect (if any) of those impairments on the claimant's functional limitations. The court is therefore unpersuaded that Dr. Graf's diagnoses are irrelevant.

considered this contrary evidence and chose to discredit it, or simply ignored it, the court must send the case back down for further review.

Finally, the Commissioner argues that even if the court assumes Dr. Graf's diagnoses affected Rogers's limitations, "Dr. Graf's specific functional limitations conclusively demonstrate that these diagnoses did not cause limitations beyond those that are already included in the ALJ's decision," and thus, "had the ALJ acknowledged these diagnoses the ultimate outcome would have remained the same."[7] The court rejects this argument for several reasons.

First, it is an overstatement to baldly claim that Dr. Graf's limitations "conclusively demonstrate" anything about the import of his diagnoses. Second, as noted above, Dr. Graf opined that Rogers was "impaired in bending, stooping, lifting, carrying, squatting tolerances." Tr. 607. The ALJ's failure to evaluate and consider this opinion may have caused him to erroneously refuse to adopt certain additional limitations from Dr. Ghazi, or erroneously give lesser weight to other favorable medical opinions. See Higgins, 2020 WL 91059, at *4. For example, the ALJ did not adopt Dr. Ghazi's opinions that Rogers could only lift or carry five pounds frequently and ten pounds occasionally, and that Rogers's pain would frequently interfere with her attention and concentration. Tr. 2627. Had the ALJ considered Dr. Graf's examination, diagnoses, and opinions, perhaps he would have adopted these additional limitation opinions from Dr. Ghazi. Indeed, during cross-examination, Dr. Ghazi acknowledged that he had read

---

[7] Doc. 13-1, at 8.

Dr. Graf's examination report and found Dr. Graf's note of abnormal straight leg raising, both sitting and supine, to be a "significant finding" that "correlate[d] with other findings such as reflex changes and a constant radiation of pain." Tr. 2670. Dr. Ghazi then agreed that Rogers was "experiencing some fairly significant levels of pain throughout the course of this record." Id. Third, the Commissioner's argument ignores the fact that Dr. Graf was an examining provider and examining providers' opinions normally carry more weight than non-examining providers like Dr. Ghazi. See 20 C.F.R. § 404.1527(c)(1). The court therefore cannot accept the Commissioner's speculative argument that the "ultimate outcome would have remained the same" had the ALJ considered Dr. Graf's opinions. See Perry v. Colvin, 91 F. Supp. 3d 139, 153 (D. Mass. 2015) (remanding because "if the [ignored] opinions had been properly evaluated by the ALJ, the weight of the evidence could have shifted in Plaintiff's favor").

    Courts "will not hesitate to reverse and remand determinations of non-disability when an ALJ does not adhere to the requirements set forth in the SSA's own regulations" because the reviewing court "has no way to determine how, or even if, the ALJ considered a [examining physician] opinion that supports Plaintiff's description of her symptoms and functional limitations." Perry, 91 F. Supp. 3d at 153. That is the case here. In sum, the court concludes that Dr. Graf's opinions supported Rogers's position, were not cumulative of other evidence in the record, and that the result would not necessarily have been the same had the ALJ considered Dr. Graf's opinions. It was therefore reversible error for the ALJ to not consider Dr. Graf's opinions. See Higgins, 2020 WL 91059, at *4 ("Therefore, because it is the task of the ALJ, not this court, to

15

resolve conflicts in the evidence and determine whether a claimant is disabled, this court remands the case to the ALJ.") (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Pursuant to the fourth sentence of 42 U.S.C. § 405(g), the court remands the case to the Social Security Administration for further proceedings consistent with this decision.

### 2. Remaining arguments

Because the court concludes that the ALJ's failure to discuss Dr. Graf's medical opinion requires reversal, the court need not address Rogers's challenges to the weight the ALJ afforded Dr. Ghazi. And in fact, the ALJ may decide to assign different weight to Dr. Ghazi's opinions after properly considering and evaluating Dr. Graf's opinions. See 20 C.F.R. § 404.1527(b)(c). On the court's limited review of this issue, however, it appears that the ALJ's rejection of certain limitations offered by Dr. Ghazi is not supported by substantial evidence. As an example, the ALJ did not adopt Dr. Ghazi's opinion that Rogers's pain would frequently interfere with her attention and concentration because Dr. Ghazi observed that Rogers was receiving treatment to deal with her pain. However, Dr. Ghazi further testified that treatment interventions "were of limited duration as far as a decrease in [Rogers's] pain levels" and the ALJ appears to have ignored that conflicting testimony.

## IV. Conclusion

For these reasons, the Commissioner's motion to affirm[8] is DENIED and Rogers's motion to reverse and remand[9] is GRANTED. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: March 25, 2021

cc:  D. Lance Tillinghast, Esq.
     Daniel S. Tarabelli, Esq.

---

[8] Doc. no. 13.

[9] Doc. no. 10.